J-S43046-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.T.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2134 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001217-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: S.T.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2135 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000580-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2136 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001218-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-S43046-22

|  | : |  |
|---|---|---|
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2137 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000581-2021

| IN THE INTEREST OF: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2138 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001219-2019

| IN THE INTEREST OF: A.B.A.-M.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2139 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000585-2021

| IN THE INTEREST OF: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |

- 2 -

|  | : | No. 2140 EDA 2022 |
|---|---|---|

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at No(s): CP-51-DP-0001221-2019

| IN THE INTEREST OF: A.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
|  | : |  |
| APPEAL OF: D.S., MOTHER | : |  |
|  | : | No. 2141 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at No(s): CP-51-AP-0000582-2021

| IN THE INTEREST OF: A.-R.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
|  | : |  |
| APPEAL OF: D.S., MOTHER | : |  |
|  | : | No. 2142 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at No(s): CP-51-DP-0001222-2019

| IN THE INTEREST OF: A.-R.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
|  | : |  |
| APPEAL OF: D.S., MOTHER | : |  |
|  | : | No. 2143 EDA 2022 |

- 3 -

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000583-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: M.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2144 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001220-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: M.B.A.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2145 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000586-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.-R.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2146 EDA 2022 |

Appeal from the Order Entered August 11, 2022

In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001223-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.-R.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2147 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000584-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: S.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2148 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001432-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B.A.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2149 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000587-2021

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 17, 2023**

In this consolidated matter, D.S. (Mother) appeals the decrees terminating her parental rights to her eight Children, pursuant to the Adoption Act. **See** 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).[1]  Mother also challenges the orders changing the goals of the dependency proceedings from reunification to adoption.  Additionally, Mother's counsel has filed an application to withdraw and a brief, pursuant to **Anders v. California**, 386 U.S. 738 (1967).  After review, we affirm the termination decrees, dismiss the goal change appeals as moot, and grant counsel leave to withdraw.[2]

The record discloses the following factual and procedural history.  The relevant procedural and factual history is as follows.  The family came to the attention of DHS in Summer 2019, when Mother's 14-year-old daughter, T.R. alleged abuse by both Mother and Father.  Father is the stepfather of T.R.;

_____

[1] The subject Children are:

- S.T.S, daughter, age 14
- I.D, son, age 10
- Ab. D., son, age 8
- A.-R.D. 1 son, age 7
- A.-R.D. 2., son, age 6
- Aa.D., daughter, age 5
- M.D., son, age 3
- S.D., daughter, age 2

[2] The trial court also terminated the rights of K.D. (Father).  His consolidated appeals are separately listed before this panel.

T.R. is not the subject of these appeals.[3]  T.R. alleged that Mother beat her and forced her to sleep outside.  She also alleged that Father inappropriately touched her on her buttocks and breasts, made her stay in the bathroom while he showered, exposed himself to her, and on one occasion, licked the back of her ear.[4]

These disclosures caused DHS to investigate the wellbeing of Father's seven other Children, who are the subject of this case.[5]  The Agency interviewed the Children in the home.  At that time, none of the Children disclosed abuse, but the caseworker believed that the Children were afraid to speak up and had tried to convey to the caseworker that Father could overhear to their conversation.  Father had chosen the room for the caseworker's interview, and he could be seen visible pacing outside on the porch.

On July 25, 2019, DHS obtained orders for protective custody for the Children.  After the shelter care hearing, the Children were temporarily committed to DHS custody.  A subsequent disclosure revealed that one of the Children was beaten by Mother at Father's direction, and that the Child was made to sleep outside as punishment.  The Child also alleged that she was

---

[3] The trial court previously changed the goal of T.R.'s dependency proceedings from reunification to another planned permanent living arrangement (APPLA), i.e., permanent long-term foster care until the age of majority. *See Interest of T.R.*, 283 A.3d 377 (Table), 2022 WL 2813796 (Pa. Super. 2022) (non-precedential decision).

[4] Father is the stepfather of T.R.  Her biological father was unknown.

[5] The youngest subject Child, S.D., was not yet born.

forced to do chores in her underwear to ensure that she did not have any food on her person.

In September 2019, the Children were adjudicated dependent. The court learned that Mother had given birth to S.D., and that the birth was hidden from the agency. The facts that gave rise to the adjudications of the older Children were a predicate for the removal and eventual adjudication of S.D. The juvenile court instituted a single case plan, comprising of certain goals to aid Mother with reunification. The goals included: to attend supervised visitation with the Children; to complete a program for parents of children who have been sexually abused; and to complete a parenting program.

The visits between the parents and the Children were tense. Mother and Father would reprimand the Children if they did not say they were poorly treated in the foster home. The parents tried to coerce the Children into taking pictures of their foster home. The parents would also try to influence the Children as to what they should say to the caseworkers and the court. During one visit, Mother shoved a staff member. The parents would be late to the visits, and they showed the Children pictures of guns. As a result, the court order that the Children receive therapeutic visits, but such visits did not occur because Mother did not sign up for them. Although Mother attended some of the court-ordered programing, she did not put any of the lessons into practice.

Meanwhile, investigations into the parents' alleged abuse continued. The Children subsequently participated in a forensic interview with

Philadelphia Children's Alliance, where they were then referred for evaluations by Dr. Michelle Dominguez, M.D., a child abuse pediatrician at St. Christopher's Hospital for Children. During their evaluations, the Children made additional disclosures. They claimed, among other allegations, that Father would punch them and whip them with extension cords; that their refrigerator was chained shut so they could not get food; that Father forced them to eat the ants that were in their cereal; and that they were sometimes forced to stay in the basement, which was often dark and flooded. Dr. Dominguez physically examined the Children and noted the presence of bruising consistent with inflicted trauma. Father defended some of his actions, maintaining that he merely disciplined the Children in accordance with his Islamic faith. He denied other allegations, which he said were fabricated by the Children because they were rebelling against his religion.

In August 2021, the parents were arrested. Their arrests resulted in a no-contact order, which suspended visits with the Children. DHS eventually petitioned to change the goal of the dependency proceedings from reunification to adoption and to terminate Father's rights. The court held the termination hearing over the course of several days on March 14, March 28, and June 2, 2022. On August 11, 2022, the court articulated its findings on the record and entered decrees terminating Mother's rights to each respective Child.

Before we address her appeal, we note that Mother's counsel has filed a petition to withdraw and a brief pursuant to *Anders v. California*, 386 U.S.

738 (1967) and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).[6] To

withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.
>
> With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

*In re J.D.H.*, 171 A.3d at 903, 907 (Pa. Super. 2017) (citations omitted).

Additionally, counsel must file a brief that meets the following

requirements established by the Pennsylvania Supreme Court in *Santiago*:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

---

[6] This Court extended the *Anders* principles to appeals involving the termination of parental rights. *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014) (citation omitted).

*In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citation omitted). Preliminarily, we find that Counsel has complied with the technical requirements to withdraw.

In addition to verifying that Counsel substantially complied with *Anders* and *Santiago*, this Court also must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted). *Flowers* does not require us "to act as counsel or otherwise advocate on behalf of a party." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). "Rather, it requires us only to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Id.* Traditionally, we would start our review by giving "a most generous reading and review of 'the case' as presented in the entire record with consideration first of issues raised by counsel." *See id.* (citing *Anders*, 386 U.S. at 744).

Before we conduct our independent review, however, we first address the issues counsel presented in the *Anders* brief that arguably support Mother's appeal. *See M.C.F.*, 230 A.3d at 1219. The three issues presented are as follows:

> 1. Did the trial court err as a matter of law or abuse its discretion where it determined that the requirements of 23 Pa.C.S.A. § 2511(a) were met?

2. Did the trial court err as a matter of law or abuse its discretion where it determined the requirements of 23 Pa.C.S.A. § 2511(b) were met?

3. Did the trial court err as a matter of law or abuse its discretion where it determined that the permanency goal for the Children should be changed to adoption?

*Anders* Brief at 3 (cleaned up).

We review these issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

- 12 -

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Here, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201(Pa. Super. 2000) (*en banc*).

Mother's first issue of arguable merit involves the initial prong of the termination analysis under Section 2511(a). As we need only agree with the orphans' court as to one subsection of Section 2511(a), we analyze whether the Agency properly established grounds for termination under Section 2511(a)(2). That section provides in relevant part:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal;

(2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In re C.M.K.***, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. ***In re Z.P.***, 994 A.2d 1108, 1117 (Pa. Super. 2010).

We note that the grounds for termination are not limited to affirmative misconduct like abuse but concern parental incapacity that cannot be remedied. ***See id.*** This case, however, explicitly concerns abuse. The trial court set forth its Section 2511(a)(2) findings on the record:

> [T]he testimony of Dr. Dominguez, which I found credible, was that these children, not only were they subject to continued and repeated abuse, whether by denying food or being hit in the head with 2-by-4s, being hit with extension cords, being made to get into showers that were hot, and then with cords that were run under cold water, being hit with those cords, Dr. Dominguez went a step further from saying that that's abuse. In fact, she indicated that that meets the definition of child torture. And while she testified, and, again, credibly, that neither [Ab.D, A-R.D. 1 or A.-R.D. 2.] disclosed any abuse, the physical findings on those children's bodies were consistent with the physical findings on the bodies of [T.R., S.T.S., and I.D.], all of whom disclose physical abuse in the manner in which they were abused. And so the fact she also determine that based on photos review from [Ab.D.] and well as her physical examination of [I.D., T.S., and A.-R. D. 1, and A.-R.D. 2,] that the markings on [A.-R.D.1, A.-R.D. 2, and Ab.-D.'s] body were consistent with he physical abuse that was disclosed as to [T.R., S.T.S., and I.D.] in their PCA interviews. [...]

In addition to what the children disclosed in their PCA interview and to their CUA case manager, because Ms. McNeill also testified that [I.D., T.R., and S.T.S.] disclosed abuse, found in the transcripts that were entered into evidence that were part of this court's prior hearings, [S.T.S., I.D., and T.R.] testified *in camera* as to the abuse that they suffered. And this court found them credible when they testified *in camera*. All counsel was present for those hearings, except for TPR counsel, as she was appointed after those hearings.

And so the testimony has been consistent each time these Children have disclosed as to what they were subjected to in [Father's] and [Mother's] home. And I have to say, I started out as a social worker working with families in the system. I worked for nine years as a solicitor for DHS. And I've been on the bench. This is my fifth year. I have never ever heard a doctor testify that what children suffered was torture. I'm speechless.

And so this court is going to find that while there was no testimony as to the younger children, the testimony of Dr. Dominguez as an expert that the fact that sexual abuse was found as to [T.R], and physical abuse as to the other Children, all of the Children in Mother and Father's care would be at risk. And so I am terminating for all the Children under [Section] 2511(a)(2). Specifically, [T.R., I.D., S.T.S., A.-R.D. 1, A.-R.D. 2, and Ab.D.] suffered actual abuse at the hands of their parents consistent with the markings on their bodies.

N.T. 91-94.

Upon our review, the trial court properly determined that the Agency established grounds under Section 2511(a)(2) by clear and convincing evidence. The abuse caused the Children to go without parental care. The Agency provided services to no avail. Mother cannot or will not remedy the conditions which caused the Children to be removed from her care. Mother's first issue is without merit.

In her second issue of arguable merit, Mother argues the trial court abused its discretion when it found that termination best served the Child's needs and welfare. Section 2511(b) provides:

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

> This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). Moreover, the court is not required to use expert testimony to resolve the bond analysis. *In re Z.P.*, 994 A.2d 1108, 1121 (citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008)).

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

Instantly, the trial court heard testimony about the needs and welfare of the Children. The trial court thoroughly addressed its findings on the record. *See* N.T., 8/11/22, at 100-115. We note that only two of the Children, A.-R.D. 1 and A.-R.D.-2, had articulated a desire to see Mother, but they did not articulate a request to be returned to her care. The court concluded that none of Children had a beneficial bond worth preserving. For instance, once the visits between the Children and Mother were suspended, the Children

began doing much better in foster care. We conclude that Mother's second issue also lacks merit.

Having concluded that the trial court properly terminated Mother's rights as to each Child, we turn our focus to Mother's third issue of arguable merit. Mother claims the trial court erred when it changed the goals of the dependency cases from reunification to adoption. Because we have already concluded that termination was warranted, we dismiss these challenges as moot. *See Interest of D.R.W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").

Finally, we must conduct our independent review to discern whether there are any additional, non-frivolous issues overlooked by counsel, pursuant to *Flowers*, 113 A.2d at 1250. Upon a "generous" review of the record, we discover no other issues of arguable merit. *See Dempster*, 187 A.3d at 272.

In sum, after review, we agree with counsel's assessment that Mother's issues on appeal are frivolous and that the Agency presented clear and convincing evidence to support the termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2) and (b). We therefore grant counsel's petition to withdraw and affirm the orphans' court order terminating Mother's parental rights.

Petition to withdraw granted. Termination decrees affirmed. Goal change orders affirmed.

Judge Nichols joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2023